### IN THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **IN RE:** | **CASE NO.  09-02048** |
| | **Chapter   7** |
| **PMC MARKETING CORP** | |
| | **Adversary No. 12-00175** |
| **Debtor(s)** | |
| **NOREEN WISCOVITCH RENTAS** | |
| **Plaintiff** | |
| **vs.** | |
| **OFFICE PARK INC** | |
| | **FILED & ENTERED ON 07/05/2013** |
| **Defendants** | |

### OPINION AND ORDER

Before this court is Creditor/Defendant's Motion for Summary Judgment [Dkt. No. 22], Trustee/Plaintiff's Opposition to Defendant's Motion for Summary Judgment [Dkt. No. 23], Plaintiff's Response to Defendant's Statement of Facts with Counter Statement of Facts [Dkt. No. 24] and Defendant's Reply to Plaintiff's Response to Defendant's Statement of Facts with Counter Statement of Facts [Dkt. No. 28]. For the reasons set forth below, Defendant's Motion for Summary Judgment is DENIED.

### I.  Background

Debtor, PMC Marketing Corporation, filed a voluntary chapter 11 bankruptcy petition on March 18, 2009. Debtor assumed an executory contract with Office Park, Inc. on October 14, 2009.

On May 21, 2010, Debtor's bankruptcy case was converted to Chapter 7. On March 2, 2012, the Chapter 7 Trustee filed an adversary proceeding to recover funds to the estate from the Defendant. Defendant's Motion for Summary Judgment and Plaintiff's Opposition followed.

**II. Summary Judgment Motion**

The role of summary judgment is to look behind the facade of the pleadings and assay the parties' proof in order to determine whether a trial is required. Under Fed.R.Civ.P., Rule 56(c), made applicable in bankruptcy by Fed.R.Bankr.P., Rule 7056, a summary judgment is available if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); Borges ex rel. S.M.B.W. v. Serrano-Isern, 605 F.3d 1, 4 (1st Cir. 2010). As to issues on which the movant, at trial, would be compelled to carry the burden of proof, it must identify those portions of the pleadings which it believes demonstrates that there is no genuine issue of material fact. In re Edgardo Ryan Rijos & Julia E. Cruz Nieves v. Banco Bilbao Vizcaya & Citibank, 263 B.R. 382, 388 (B.A.P. 1st Cir. 2001). A fact is deemed "material" if it potentially could affect the outcome of the suit. Borges, 605 F.3d at 5. Moreover, there will only be a "genuine" or "trial worthy" issue as to such a "material fact," "if a reasonable fact-finder, examining the evidence and drawing all reasonable inferences helpful to the party resisting summary judgment, could resolve the dispute in that party's favor." Id. at 4. The court must view the evidence in the light most favorable to the nonmoving party. Alt. Sys. Concepts, Inc. v. Synopsys, Inc., 374 F.3d 23, 26 (1st Cir. 2004). Therefore, summary judgment is "inappropriate if inferences are necessary for the judgment and those inferences are not mandated by the record." Rijos, 263 B.R. at 388.

Although this perspective is favorable to the nonmoving party, she still must demonstrate, "through submissions of evidentiary quality, that a trial worthy issue persists." Iverson v. City of Boston, 452 F.3d 94, 98 (1st Cir. 2006). Moreover, "[o]n issues where the nonmovant bears the ultimate burden of proof, [she] must present definite, competent evidence to rebut the motion." Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir.1991).These showings may not rest upon "conclusory allegations, improbable inferences, and unsupported speculation." Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir.1990). But, the evidence offered by the nonmoving party "cannot be merely colorable, but must be sufficiently probative to show differing versions of fact which justify a trial." Id. See also Horta v. Sullivan, 4 F.3d 2, 7-8 (1st Cir. 1993) (the materials attached to the motion for summary judgment must be admissible and usable at trial.) "The mere existence of a scintilla of evidence" in the nonmoving party's favor is insufficient to defeat summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); González-Pina v. Rodríguez, 407 F.3d 425, 431 (1st Cir. 2005).

In the summary judgment motion presently before the court, Defendant argues that there are no genuine issues as to material facts and therefore the moving party is entitled to judgment as a matter of law. Defendant contends the following facts to be undisputed:

1. PMC MARKETING CORP. filed a bankruptcy petition on March 18th, 2009.

2. On October 14, 2009, the Debtor assumed the executory contract with Office Park, Inc.

3. This Court approved such assumption on February 19, 2010.

4. The case was converted from a Chapter 11 case to a Chapter 7 case "on May 20, 2010."

5. The alleged payment of $35,000.00 was not paid by Debtor to Office Park, Inc. and was within 90 days of the conversion of its case to a Chapter 7.

6. No evidence of the payment has been produced by Debtor.

Further, Defendant contends that pursuant to 11 U.S.C. §348(a), "[c]onversion of a case from a case under one chapter of this title to a case under another chapter of this title constitutes an order for relief under the chapter to which the case is converted, but, except as provided in subsections (b) and (c) of this section, does not effect a change in the date of the filing of the petition, the commencement of the case, or the order for relief." Defendant points out that because this case was filed on March 18, 2009, this date is considered the date of filing and not the date of the conversion of such case. Additionally, pursuant to §547(b), with certain exceptions, the Trustee may avoid transfer of an interest of the debtor in property made on or within 90 days before the date of the filing of such petition. Therefore, because Plaintiff's petition was filed on March 18, 2009, any transfers the Trustee attempts to avoid must fall within the 90 days period before such date. Defendant further cites to § 365, to which the Defendant claims that the code authorized it to receive payments from assumed executory contracts. Thus, even if Debtor made a $35,000.00 payment to the Defendant, such payment was made within the 90 day period of the conversion to a Chapter 7 case, not the filing of the case and as part of an assumed executory contract that was in effect as of the date of the payment. Conclusively, Defendant argues that there was no avoidable preferential payment that can be avoided by the Trustee under § 547(a).

In opposition, Plaintiff argues that Debtor made two (2) preferential transfers to Defendant totaling the amount of $35,000.00: (1) Check No. 092344 in the amount of $17,500.00 and (2) Check No. 092749 in the amount of $17,500.00. Defendant deposited such payments on January 8, 2009 and February 24, 2009, on account of the rent due for the months of November and December. Therefore, because the Debtor filed for Chapter 11 bankruptcy on March 19, 2009, such transfers are

avoidable transfers well within the 90 days prior to the filing of bankruptcy as permitted by § 547.

In its reply to the Plaintiff's opposition, Defendant's argument is two-fold, that such payments identified by the Plaintiff (1) incurred within the ordinary course of business and (2) are administrative expenses and thus cannot be avoided. First, Defendant cites to § 547(c)(2) to which the Trustee may not avoid such transfer to the extent that such transfer was in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and such transfer as made in the ordinary course of business or financial affairs of the debtor and the transferee. Second, Defendant argues that Plaintiff identified payments that should be considered as administrative expenses under § 547 and § 503(b)(3)(F)(7). Defendant argues that because Debtor has a rental contract effective before the filing of its bankruptcy petition, pursuant to § 345(b)(1)(A), Plaintiff has to be current in his payments or cure such arrears. Therefore, such payment of monthly rent is not a preferential payment but rather an administrative expense to which the Debtor received and benefitted from occupying Defendant's commercial premises.

## A. Summary Judgment Standard

After reviewing the Plaintiff's arguments, and the relevant law, this court concludes that there are genuine issues as to material fact and that the moving party is not entitled to judgment as a matter of law.  In a motion for summary judgment, in order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense, *or* demonstrate that the nonmoving party does not have sufficient evidence of an essential element to carry its ultimate burden of persuasion at trial. Lopez v. Corporacion Azucarera de Puerto Rico, 938 F.2d 1510, 1516-17 (1st Cir. 1991); High Tech Gays v. Defense Indus. Sec. Clearance Office, 895 F.2d 563, 574 (9th Cir.1990). Regardless, in order to carry its ultimate burden of

persuasion on the motion, the moving party must persuade the court that there is no genuine issue of material fact. Id.

Therefore, if a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce any evidence, even to the extent that the nonmoving party would have the ultimate burden of persuasion at trial. See Adickes v. S.H. Kress & Co., 398 U.S. 144, 160, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); High Tech Gays, 895 F.2d at 574. With such scenario above, the nonmoving party can then defeat a summary judgment motion without producing any evidence. See High Tech Gays, 895 F.2d at 574; Clark v. Coats & Clark, Inc., 929 F.2d 604, 607 (11th Cir.1991). On the contrary, if a moving party carries out its burden of production, the nonmoving party must produce evidence to support its claim or defense. See High Tech Gays, 895 F.2d at 574; Cline v. Industrial Maintenance Eng'g. & Contracting Co., 200 F.3d 1223, 1229 (9th Cir.2000). Therefore, if the nonmoving party fails to produce sufficient evidence to create a genuine issue of material fact, the moving party prevails in the motion for summary judgment. See Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) ("Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."). Alternatively, if the nonmoving party produces sufficient evidence to establish a genuine issue of material fact, the nonmoving party defeats the motion. See id.

Therefore, the primary inquiry this Court must decide first is whether the Defendant, as the moving party carried his initial burden of production and accordingly whether the Plaintiff, as the nonmoving party, had an obligation to produce evidence in response. The Supreme Court provided

for such analytical framework in <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970), and <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The Supreme Court, under <u>Adickes</u> and <u>Celotex</u>, offered guidance that a moving party without the ultimate burden of persuasion at trial may regardless carry its initial burden of production by either of two methods: the moving party may produce evidence negating an essential element of the nonmoving party's case, or, after suitable discovery, the moving party may show that the nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial. In practice, the first method mentioned above or the <u>Adickes</u> method, may be more commonly employed because the moving party may find it easier to produce affirmative evidence negating an essential element of the nonmoving party's claim or defense than it is to show that the nonmoving party has insufficient evidence to carry its ultimate burden of persuasion at trial. Regardless the second or the <u>Celotex</u> method, is equally favored legally, where in appropriate cases, a moving party can carry its initial burden of production by demonstrating that the nonmoving party does not have enough evidence to carry its ultimate burden of persuasion at trial.

**B.  Preferential Transfers**

In this instant case, this Court takes judicial notice that the Debtor's bankruptcy filing date is March 18, 2009 per the date stated on the case docket. The question this Court must answer then is whether Debtor's two payments of $17,500.00 deposited by the Defendant on January 8, 2009 and February 24, 2009 constitute avoidable transfers.

In order for payments to be recoverable as preferential transfers, payments must satisfy all of

the requirements of 11 U.S.C. § 547(b). The Trustee bears the burden of proving the transfers were: (1) to or for the benefit of a creditor; (2) for or on account of an antecedent debt owed by the debtor before such transfers were made; (3) made while the debtor was insolvent; (4) on or within ninety (90) days before the date of filing of the petition; and (5) enable the benefited creditor to receive more than such creditor would have received had the case been a chapter 7 liquidation and the creditor not received the transfer. 11 U.S.C. § 547(b). This Court is satisfied per the evidence provided by the Trustee that Debtor's payments to Defendant meet the criteria of § 547(b), and therefore are preferences as defined by the Code.

### i.  Ordinary Course of Business

However, Defendant argues that, even if it has received preferential payments, those payments fall under the "ordinary course of business" exception in 11 U.S.C. § 547(c)(2) that thus makes these payments unrecoverable by the Trustee. Section 547(c)(2) of the Bankruptcy Code, as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), provides that:

(c) The trustee may not avoid under this section a transfer

(2) to the extent that such transfer was in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee, **and** such transfer was;

(A) made in the ordinary course of business or financial affairs of the debtor and the transferee; **or**

(B) made according to ordinary business terms. (emphasis ours).

11 U.S.C. § 547(c)(2); 11 U.S.C. § 547(g); In re Healthco Int'l, Inc., 132 F.3d 104, 109 (1st Cir.

1997); <u>Advo-System, Inc. v. Maxway Corp.</u>, 37 F.3d 1044, 1047 (4th Cir.1994); <u>Sulmeyer v. Suzuki (In re Grand Chevrolet, Inc.)</u>, 25 F.3d 728, 732 (9th Cir.1994); <u>Jones v. United Sav. & Loan Ass'n. (In re U.S.A. Inns of Eureka Springs, Ark., Inc.)</u>, 9 F.3d 680, 682 (8th Cir.1993). This Congressional statutory change in BAPCPA demonstrates that Creditors no longer have to meet all three prongs under § 547(c)(2) but merely the first and second prongs[1] *or* the first and third prongs.

The ordinary course of business exception is derived from the core of bankruptcy preference law. As such, this exception cries to strike a dragon-fly landing-like balance between shielding payments received by creditors to the extent that those creditors who remain committed to a debtor during times of financial distress and maintaining an elastic area of flexibility to creditors in dealing with the debtor, provided that the steps taken are consistent with customary practice among specific industry participants. Congressional records are consistent with this interpretation as it reveals that the purpose of this exception is to "leave undisturbed normal financial relations, because it does not detract from the general policy of the preference section to discourage unusual action by either the debtor or [its] creditors during the debtor's slide into bankruptcy." H.Rep. No. 595, 95th Cong., 1st Sess. 373 (1977), reprinted in 1978 U.S. Code Cong. & Admin. News 6329.

Sections 547(c)(2) and 547(c)(2)(A) in relevant part, state that: "The trustee may not avoid under this section a transfer to the extent that such transfer was in payment of a debt incurred by the debtor in the ordinary course of business *or* financial affairs of the debtor and the transferee and such transfer was—(A) made in the ordinary course of business or financial affairs of the debtor and the transferee." (emphasis ours). Under the first two prongs of § 547(c)(2) and § 547(c)(2)(A),

---

[1] For the purpose of the analysis, § 547(c)(2) is the "first prong" ; § 547(c)(2)(A) is the "second prong"; and § 547(c)(2)(B) is the "third prong."

Defendant simply needs to demonstrate that by a preponderance of the evidence that the specific transaction was ordinary as between the parties. Daly v. Radulesco (In re Carrozzella & Richardson), 247 B.R. 595, 603 (B.A.P.2d Cir.2000); see also In re Enron Creditors Recovery Corp. , 376 B.R. at 459 (stating that the subjective test focuses solely on the prior dealings of debtor and creditor). So while a late payment is usually non-ordinary, the defendant can rebut this presumption if late payments were the standard course of dealing between the parties. See Id. (quoting 5 ALAN N. RESNICK & HENRY J. SOMMER, COLLIER ON BANKRUPTCY ¶ 504.04[2][ii], at 547–55 (16th ed. 2010) ("COLLIER")). In determining whether a transfer satisfies the requirements of Section 547(c)(2)(A), courts examine several factors including "(i) the prior course of dealing between the parties, (ii) the amount of the payment, (iii) the timing of the payment, (iv) the circumstances of the payment, (v) the presence of unusual debt collection practices, and (vi) changes in the means of payment." Buchwald Capital Advisors LLC v. Metl–Span I., Ltd. (In re Pameco Corp.), 356 B.R. 327, 340 (Bankr.S.D.N.Y.2006); Official Comm. of Unsecured Creditors of 360networks (USA) Inc. v. U.S. Relocation Servs. (In re 360networks (USA) Inc.), 338 B.R. 194, 210 (Bankr.S.D.N.Y.2005); see also Hassett v. Goetzmann (In re CIS Corp.), 195 B.R. 251, 258 (Bankr.S.D.N.Y.1996).

To a certain extent, Defendant must establish a "baseline of dealings" between the parties to "enable the court to compare the payment practices during the preference period with the prior course of dealing." In re Fabrikant & Sons, Inc., 2010 WL 4622449, at *3; Cassirer v. Herskowitz (In re Schick), 234 B.R. 337, 348 (Bankr.S.D.N.Y.1999). Defendant therefore must "demonstrate some consistency with other business transactions between the debtor and the creditor." Id. at *3. Summarily, this Court would have to engage in a comparison of the average number of days between

the invoice and payment dates during the pre-preference and preference periods. In re Quebecor World (USA), Inc., 08-10152 SHL, 2013 WL 1741946 (Bankr. S.D.N.Y. Apr. 23, 2013); also see In re Fabrikant & Sons, Inc., 2010 WL 4622449, at *4. Defendant, in this instant case, did not supplement any evidence within the factors as stated above including those that may demonstrate that the late rent payments received were ordinary to the parties. Although the Defendant has not established with adequate evidence to prevail under § 547(c)(2)(B), this subsection calls for an examination of § 547(c)(2)(B).

Unlike sections 547(c)(2) and 547(c)(2)(A), where the interpretation relies on the proof of the parties' own dealings, § 547(c)(2)(B) has an objective element which requires reference to some external datum. A survey of circuit case law reveals that the majority of the Circuit Court of Appeals, with the exception of the Eleventh Circuit Court of Appeals[2], concluded that the "ordinary business terms" meaning is to be held broadly to customary terms and conditions used by other individuals in the same industry witnessing exact or similar problems. In re Roblin Industries, Inc., 78 F.3d 30, 39 (2nd Cir. 1996) (collecting cases). Such conduct between the debtor and the creditor should be held objectively in light of the industry practices. Therefore, "only dealings so idiosyncratic as to fall outside that broad range should be deemed extraordinary and therefore outside the scope of subsection [B]." In re Tolona Pizza Products Corp., 3 F.3d 1029, 1033 (7th Cir.1993). This interpretation is in line with the Congressional legislative history as it reveals:

The purpose of the preference section is two-fold. First, by permitting the trustee to avoid

---

[2] See Marathon Oil Co. v. Flatau (In re Craig Oil Co.), 785 F.2d 1563, 1566-67 (11th Cir.1986) (The Eleventh Circuit adopted the conduct of the parties standard instead of the objective inquiry adopted by the other Circuits. The conduct of the parties standard observes the conduct of the parties themselves to determine if the terms of a preferential transfer are ordinary).

pre-bankruptcy transfers that occur within a short period before bankruptcy, creditors are discouraged from racing to the courthouse to dismember the debtor during [its] slide into bankruptcy. The protection thus afforded the debtor often enables [it] to work [its] way out of a difficult financial situation through cooperation with all of [its] creditors. Second, and more important, the preference provisions facilitate the prime bankruptcy policy of equality of distribution among creditors of the debtor. Any creditor that received a greater payment than others of [its] class is required to disgorge so that all may share equally. The operation of the preference section to deter "the race of diligence" of creditors to dismember the debtor before bankruptcy furthers the second goal of the preference section-that of equality of distribution.

H.Rep. No. 595, 95th Cong., 1st Sess. 177-78 (1977), reprinted in 1978 U.S. Code Cong. & Admin. News 5963, 6138.

Therefore, this Court agrees with the objective standard that 11 U.S.C. § 547(c)(2)(B) mandates a creditor to establish that a payment for which it seeks the protections of under the ordinary course of business exception to fall within not the bounds of the ordinary practice between its own ordinary practice but rather the ordinary practice of others similarly situated within the same industry.

Having established this objective standard under § 547(c)(2)(B), "ordinary business terms" must include those terms employed by similarly situated debtors and creditors facing the same or similar situations. Therefore, if the terms in question are ordinary for industry participants under financial distress, then that is ordinary for the industry. This objective standard serves a protective function to which a creditor that agrees to restructure a debt in a manner consistent with industry practice in those circumstances would not lose the benefit of such exception. Such objective standard

also serves a dual policy function in which an industry creditor acting in a specific manner would not be viewed as performing unusual practice when such creditor does no more than follow usual industry practice - precisely the kind of behavior the ordinary course of business exception was intended to protect - would lessen the restriction a creditor would experience in courses of action typical in untroubled times in order to allow room for realistic debt workouts and would not unfairly penalize those creditors who take conventional steps to institute a repayment plan. See In re U.S.A. Inns of Eureka Springs, Arkansas Inc., 9 F.3d 680 at 682-86.

In this instant case, Defendant fails to present any evidence to justify § 547(c)(2)(B) and thus cannot qualify for the ordinary course of business exception.

### ii. Administrative Expenses

Defendant further argues that the identified payments should be considered as administrative expenses and thus cannot be avoided. Defendant cites to "§ 503(b)(3)(F)(7)" in error. Regardless, although the Defendant's argument has no merit relative to the Trustee's broad avoidance power, this Court will nonetheless briefly address administrative expenses within the Bankruptcy Code.

Section 503(b)(1)(A) of the Bankruptcy Code provides that "there shall be allowed administrative expenses ... including—the actual, necessary costs and expenses of preserving the estate...." A survey of case law reveals that the terms "actual" and "necessary" found in the statute are to be narrowly construed. 11 U.S.C.§ 503(b)(1)(A); In re Palau Corp., 18 F.3d 746 (9th Cir. 1994). Therefore, to qualify as an administrative expense entitled to priority, the expense must be an actual and necessary cost of preserving the estate for the benefit of its creditors. 11 U.S.C. § 503(b)(1)(A). Even assuming *arguendo*, that Defendant met the procedural requirements of asserting an administrative claim, Defendant bears the burden of satisfying each element of § 503(a)(2)(B) by a

preponderance of the evidence. Woburn Assoc. v. Kahn (In re Hemingway Transport, Inc.), 954 F.2d 1, 5 (1st Cir.1992). Citing to the pre-Bankruptcy Code case of Cramer v. Mammoth Mart, Inc. (In re Mammoth Mart, Inc.), 536 F.2d 950 (1st Cir.1976), the First Circuit instructed that generally that "a request for priority payment of an administrative expense pursuant to Bankruptcy Code § 503(a) may qualify if (1) the right to payment arose from a postpetition transaction with the debtor estate, rather than from a prepetition transaction with the debtor, and (2) the consideration supporting the right to payment was beneficial to the estate of the debtor." Regardless, in this instant case, Defendant failed to meet such burden.

Summarily, Defendant failed to carry out the burden as mandated by either Adickes or Celotex. Defendant not only failed to produce evidence negating an essential element of the nonmoving party's case, but it also failed to show that the Plaintiff does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial. Summarily, Plaintiff presented sufficient evidence to demonstrate that there are genuine issues of material facts in dispute for a trial.

WHEREFORE, IT IS ORDERED that Defendant's Motion for Summary Judgment shall be, and it hereby is, DENIED. The Clerk to schedule a Final Pretrial Conference.

SO ORDERED

In San Juan, Puerto Rico this 5th day of July, 2013.

Brian K. Tester
U.S. Bankruptcy Judge